WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>       Plaintiff,<br><br>vs.<br><br>Eric David Marrufo,<br><br>       Defendant. | No.  CR 17-976-TUC-CKJ<br><br>ORDER |

Pending before the Court are the Motion to Preclude Government's Use of Defendant's Statement at Trial (Doc. 103) and First Amended Motion to Preclude Government's Use of Statement at Trial (Doc. 243) filed by Defendant Eric David Marrufo ("Marrufo").  The government has filed responses (Docs. 209, 245).  Evidence and oral argument were presented to the Court on April 19, 2021, and May 3, 2021.  The Court took the matter under advisement.

*Factual Background*

On July 13, 2015, the Pascua Yaqui Police Department ("PYPD") learned of a historical allegation of sexual assault that took place between approximately January 1, 2006 and June 30, 2009.  Forensic interviews of the alleged two victims, E.M. and R.M., were conducted on September 18, 2015.

Based on these interviews and other investigatory measures, PYPD Detective Jacob Garcia ("Det. Garcia") and FBI Special Agent Briana Grant ("Agent Grant") contacted Marrufo on November 13, 2015, at the Arizona State Prison in Tucson.  Marrufo asserts the

purpose of the contact was to conduct an interview regarding the commission of the offenses for which he was ultimately charged in this case. Following a second forensic interview of R.M., Agent Grant and Det. Garcia re-interviewed Marrufo on May 23, 2017.

At the prison facility on November 13, 2015, Det. Garcia informed Marrufo that they wanted to speak with him about something, but before they did, they were going to let him know what his rights were. Agent Grant stated:

> BG: Okay. So like he said because you're in custody, we go over those with you, okay? I'm sure you've had it read to you before. You've been through the process before, okay? So it's nothing new. If you have any questions, you don't under[stand] what I'm saying, just ask me.
>
> EM: Okay.
>
> BG: Okay? Uhm, so before we get into what we're here to talk to you about, we have to go over these, okay? So, you, you have the right…"

Marrufo Interview, 11/13/15, (Doc. 243-1, p.2). Marrufo acknowledged that he understood. Grant advised Marrufo of his *Miranda* rights; Marrufo agreed to speak with Agent Grant and Det. Garcia. Marrufo was also advised of his *Miranda* rights prior to the May 23, 2017, interview.

At one point during the November 13, 2015, interview, Agent Grant told Marrufo that his kids were fine, but they were having issues related to the time they spent with him, and what may have happened when he was drinking. Marrufo stated that he did not know what Agent Grant was referring to. Thereafter they discussed alleged physically abusive acts of Marrufo upon his kids; Marrufo denied or could not recall these acts. Marrufo acknowledged that he had a problem with alcohol which was how he handled his depression. When Agent Grant told Marrufo that the kids were remembering a lot of physical abuse, and the girls were remembering touching, Marrufo said that was insane. Marrufo Interview, 11/13/15 (Doc. 243-2, p. 12 of 87); *see also* Marrufo Interview, 5/23/17 (Doc. 243-3, p. 39 of 160). Marrufo stated that he had shown his kids how to bathe themselves during bath time, and how to wash their hands after using the bathroom, but that was all. (Marrufo Interview, 11/13/15 (Doc. 243-2 at 13-17 of 87).

1    In response to Agent Grant's question about whether there were any times his children would have seen him naked, Marrufo recalled that his oldest child had walked into his room and saw him naked.   Marrufo Interview, 11/13/15 (Doc. 243-2, p. 17-18 of 87). Marrufo also recalled a time when his daughter moved on his leg in a sexual manner and was making a sexual moaning noise, and his daughter said she had learned it in California. Marrufo Interview, 11/13/15 (Doc. 243-2, p. 22-23 of 87). Marrufo stated that he was upset at his kids feeling this way about him. Marrufo referred to the emotional pain he had caused, that they're going through, and he was feeling betrayed.

During the May 3, 2021, hearing, counsel for Marrufo stated that Marrufo's testimony on April 19, 2021, related to all of Marrufo's contacts with law enforcement.

*Motion to Preclude Government's Use of Defendant's Statement at Trial* (Doc. 103)

Marrufo seeks to preclude statements made during the November 13, 2015, interview, the November 30, 2015, interview/polygraph examination, and the May 23, 2017, interview. The government has indicated it will not introduce evidence of the November 30, 2015, interview/polygraph examination. The Court will deny as moot the request as to November 30, 2015, interview.

A custodial suspect's post-arrest statements given in response to interrogation is only admissible in the government's case-in-chief if the statements are given after a knowing and intelligent waiver of the suspect's *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966); *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998) (citations omitted) ("For inculpatory statements made by a defendant during custodial interrogation to be admissible in evidence, the defendant's 'waiver of *Miranda* rights must be voluntary, knowing, and intelligent.'"). The burden is on the government to show that *Miranda* rights were administered and that a defendant agreed to waive them. *Miranda*, 384 U.S. at 475. Proof of waiver must be by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168-69 (1986).

A waiver of "*Miranda* rights need not be explicit; a suspect may impliedly waive the rights by answering an officer's questions after receiving *Miranda* warnings." *Rodriguez-Preciado*, 399 F.3d at 1127, *citing Terrovona v. Kincheloe*, 912 F.2d 1176, 1179–80 (9th Cir.1990). "For a waiver of rights to be valid it must be voluntarily, knowingly, and intelligently given. Whether there has been a valid waiver depends on the totality of the circumstances, including the background, experience, and conduct of defendant." *United States v. Doe*, 155 F.3d 1070, 1074 (9th Cir.1998) (en banc) (internal quotation marks and citations omitted). "Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

*Miranda* does not require a "talismanic incantation" of the warnings but the warnings provided may not be misleading or susceptible to equivocation, must be clear, and must provide "meaningful advice to the unlettered and unlearned in language which they can comprehend and on which they can knowingly act." *United States v. Perez-Lopez*, 348 F.3d 839, 848 (9th Cir. 2003), *internal quotation and citation omitted*.

Marrufo asserts the *Miranda* warning, as given, did not have the actual warning effect required under *Miranda*. Agent Grant told Marrufo that the only reason that he was being read his *Miranda* rights was because he was in custody, instead of being advised he was being interviewed because he was suspected of violating the law. Marrufo asserts a suspect must know a warning is a warning and not just a mere formality. In support of this assertion, Marrufo relies upon *Doody v. Ryan*, 649 F.3d 986, 1002 (9th Cir. 2011), *cert. denied Ryan v. Doody*, 565 U.S. 959 (2011). As summarized by another district court:

> In *Doody*, a group of officers questioned a seventeen-year-old (Doody) for thirteen hours overnight. [] During the interrogation, Doody confessed to participating in a series of murders, and he was eventually convicted. [] However, the Ninth Circuit granted Doody's writ of habeas corpus in part because it found that the he had received inadequate Miranda warnings prior to his confession. [] Specifically, the Ninth Circuit held that the *Miranda* warnings "were defective because [the officer] downplayed the warnings' significance, deviated from an accurate reading of the Miranda waiver form, and expressly misinformed Doody regarding his right to

> counsel." [] As discussed above, the evidence shows that Officer Rios did not deviate from the *Miranda* form and that the *Miranda* form sufficiently contained the requisite warnings—including Defendant's right to counsel.
>
> *Doody* is also unhelpful as to Defendant's remaining contention that Officer Rios minimized the importance of the *Miranda* warnings. In *Doody*, the officer implied to Doody that "the warnings were just formalities" and represented to him on three separate occasions that the warnings were "mutually beneficial" to Doody and the officers. [] Here, Officer Rios never suggested to Defendant that the *Miranda* warnings were mere "formalities" or repeatedly represented that they were "mutually beneficial." To the contrary, as discussed above, Officer Rios' words and actions reflected the importance of the *Miranda* warnings and their appropriate meaning.

*United States v. Vega-Arizmendi*, No. CR 2016-0009-13, 2017 WL 132844, at *6, n. 7 (D.V.I. Jan. 12, 2017), *citations omitted*. The Ninth Circuit in fact stated, the "improperly qualified, unclear, and confusing warning was that Doody only had the right to counsel if he were involved in a crime." *Doody*, 649 F.3d at 1003.

In this case, however, Marrufo was provided with the standard *Miranda* warnings. These warnings were not given with multiple qualifications as the warnings in *Doody*. Agent Grant stated Marrufo was being read his rights because he was in custody; she did not state Marrufo was being advised of his rights because he was in prison. In fact, Agent Grant testified that it is her normal practice to not initially inform an interviewee of the details of allegations because he is attempting to build a rapport with the interviewee. Indeed, Marrufo testified the initial portion of the conversation was "chitchat." Further, as *Miranda* warnings are required for custodial interrogations, Agent Grant's statement was factually correct. Moreover, the "mere silence by law enforcement officials as to the subject matter of [the] interrogation" does not invalidate Marrufo's waiver of *Miranda* rights. *Colorado v. Spring*, 479 U.S. 564, 576 (1987); *see also United States v. Serlin*, 707 F.2d 953, 956 (7th Cir. 1983) (collecting cases) (the simple failure to inform defendant of the nature of the investigation "does not amount to affirmative deceit unless defendant inquired about the nature of the investigation and the agents' failure to respond was intended to mislead"); *United States v. Okwumabua*, 828 F.2d 950, 953 (2nd Cir. 1987); *Grooms v. Keeney*, 826 F.2d 883, 886 (9th Cir. 1987) *Brown v. Baca*, No. 211CV00790KJDNJK, 2017 WL 3723648, at *29 (D. Nev. Aug. 29, 2017). The Court also considers that Marrufo was advised that if he had any

1  questions, he could stop the interview; Marrufo replied, "Oh, so you're saying if I have any
2  questions, I can stop you at any given time and for an attorney for something?" Marrufo
3  Interview, 11/13/15, (Doc. 243-1, p. 3). After Agent Grant affirmatively replied, Marrufo
4  stated he wanted to talk to the agents. There was no indication that, by invoking his rights,
5  Marrufo would be admitting to involvement in a crime. Additionally, The Court finds this
6  advisement of rights was not misleading, did not "misinform[] [Marrufo] regarding his right
7  to counsel[,]" and did not "downplay[] the warnings' significance[.]" *Doody*, 649 F.3d at
8  1003.

9  Marrufo also argues that his statements are not relevant and are potentially misleading.
10 While it is Marrufo's position the statements are not relevant and may be misleading, the
11 government's position is that portions of the statement are relevant under its theory of the
12 case.[1] Further, if Marrufo believes the statements are misleading, witnesses may be cross-
13 examined and Marrufo may choose to testify to explain the statements.

14 Relevance is not determined only by one party's theory. Under the government's
15 theory of the case, portions of the statements are relevant and the parties may argue as to
16 inferences raised by the statements. This is not a basis to preclude the statement. However,
17 the Court will schedule a deadline for the government to provide a copy of the redacted
18 statements to be used at trial to the defense.

19 Marrufo also asserts any probative value of the evidence is outweighed by the danger
20 of unfair prejudice. Fed.R.Evid. 403. However, the Ninth Circuit has stated:

21 > Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter
22 > under Rule 403. Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and
23 > sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.
24

25 *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000). Here, Marrufo argues the
26 statements, taken out of context, could have a detrimental effect on Marrufo's Fifth

27 ───────────────
    [1]The government agrees that portions of the statement are not relevant and will be
28 redacted.

- 6 -

1  Amendment due process right to a fair trial. *Petrocelli v. Gallison*, 679 F.2d 286, 292 (1st Cir.1982) (stating that where an item is so ambiguous as to leave a jury with "no clue" as to how to evaluate it, a trial judge is entitled to exclude the evidence under Fed.R.Evid. 403 on the ground that the danger of unfair prejudice from jury confusion substantially outweighed the record's probative value). The Rule of Completeness, *see* Fed.R.Evid. 106, can ensure the statements are not taken out of context. The possible unfair prejudice does not substantially outweigh the probative value. The Court finds Marrufo was adequately advised of his *Miranda* rights.

Additionally, a custodial suspect's post-arrest statements given in response to interrogation is only admissible in the government's case-in-chief if the statements are given after a knowing and intelligent waiver of the suspect's *Miranda* rights. *Miranda*, 384 U.S. at 478-79; *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998) (citations omitted) ("For inculpatory statements made by a defendant during custodial interrogation to be admissible in evidence, the defendant's 'waiver of *Miranda* rights must be voluntary, knowing, and intelligent.'"). As previously stated, the burden is on the government to show by a preponderance of evidence that *Miranda* rights were administered and that the defendant agreed to waive them. *Miranda*, 384 U.S. at 475; *Connelly*, 479 U.S. at 168-69.

A waiver of "*Miranda* rights need not be explicit; a suspect may impliedly waive the rights by answering an officer's questions after receiving *Miranda* warnings." *Rodriguez-Preciado*, 399 F.3d at 1127, *citing Terrovona v. Kincheloe*, 912 F.2d 1176, 1179–80 (9th Cir.1990). "For a waiver of rights to be valid it must be voluntarily, knowingly, and intelligently given. Whether there has been a valid waiver depends on the totality of the circumstances, including the background, experience, and conduct of defendant." *United States v. Doe*, 155 F.3d 1070, 1074 (9th Cir.1998) (en banc) (internal quotation marks and citations omitted).

Not only must the waiver of *Miranda* rights be voluntary, but the statement itself must be voluntarily made. An involuntary confession is never admissible. *Mincey v. Arizona*, 437

U.S. 385, 398 (1978); *Pollared v. Galaza*, 290 F.3d 1030, 1033 (9th Cir. 2002). "A confession is involuntary if coerced either by physical intimidation or psychological pressure." *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003). "In determining whether a defendant's confession was voluntary, 'the question is "whether the defendant's will was overborne at the time he confessed."'" *United States v. Crawford*, 372 F.3d 1048, 1060 (9th Cir. 2004) (en banc) (citations omitted); *United States v. Harrison*, 34 F.3d 886, 890 (9th Cir. 1994) (quoting *United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988) (The test for voluntariness is whether, viewing the totality of circumstances, "'the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne.'"). "Whether a confession is voluntary is determined under the totality of the circumstances, which include 'the crucial element of police coercion; the length of the interrogation; its location; its continuity; the defendant's maturity; education; physical condition; and mental health.'" *Taylor v. Maddox*, 366 F.3d 992, 1015-16 (9th Cir. 2004), *quoting Withrow v. Williams*, 507 U.S. 680, 693 (1993); *see also Connelly*, 479 U.S. at 168 (coercive police conduct is a "necessary predicate" for a finding of involuntariness).

Here, the totality of circumstances supports a conclusion that Marrufo's waiver of his *Miranda* rights and his statement were voluntary. Although the statements took place in a prison setting, it was within a large public room.[2] Marrufo had prior experience with criminal investigations and charges. Indeed, he testified that he had previously received *Miranda* warnings and that he knew he could stop the interview at any time. Further, he was of an age and maturity to understand his rights and the consequences of waiving those rights and making a statement. Marrufo testified that he believed, if he did not continue with the interview, something bad may happen to him. Specifically, he testified that by speaking with the agents it was less likely other persons in the prison would learn he was the subject of a

---

[2] Agent Grant testified that, although she did not recall whether she asked, a private room was not available. She also testified they stopped talking when other people entered the room. Marrufo testified there were six or eight other persons, including families, in the room.

child molestation investigation; he was concerned for his safety should other inmates learn of the allegations. In other words, Marrufo is asserting outside forces affected his willingness to speak with the agents, rather than any "coercive police conduct." Indeed, although Marrufo argues he believed if he did not cooperate with the agents, the agents would allow it to be known in the prison that he was being investigated for child molestation, Marrufo does not point to any specific conduct or statements by the agents to support this. In fact, Agent Grant testified that was it not her intention for Marrufo to believe she would tell people at the prison about the allegations against him to gain leverage against him. Further, Agent Grant provided her name and phone number to Marrufo rather than a business card which would identify the agency for which she worked. She also suggested Marrufo not discuss the details of the conversation with anyone in the prison. Indeed, Marrufo himself testified that his statement was completely voluntary. The Court finds Marrufo's waiver of *Miranda* rights and his statement were given voluntarily.

Accordingly, IT IS ORDERED:

1. The Motion to Preclude Government's Use of Defendant's Statement at Trial (Doc. 103) and the First Amended Motion to Preclude Government's Use of Statement at Trial (Doc. 243) are DENIED AS MOOT as to the November 13, 2015, interview/polygraph examination and DENIED as to the November 13, 2015, and the May 23, 2017, interviews.

2. Evidence regarding the November 30, 2015, interview/polygraph examination is precluded from use at trial. The government shall provide a copy of the redacted transcripts and/or audio recordings it will use at trial to the defense on or before July 12, 2021. Counsel shall strive to resolve any disputes as to relevancy and the Rule of Completeness.

3. In the event counsel are unable to resolve any disputes, the defense shall file any objections to the redacted transcripts and/or audio recordings on or before July 26, 2021. The government shall file any response on or before August 9,

2021.

DATED this 8th day of June, 2021.

_____
Cindy K. Jorgenson
United States District Judge