WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Eric David Marrufo,<br><br>    Defendant. | No.  CR 17-976-TUC-CKJ<br><br>ORDER |

Pending before the Court are the Motion for Evidentiary Hearing and to Subpoena Jurors (Doc. 416) and the Motion for New Trial (Doc. 415) filed by Defendant Eric David Marrufo ("Marrufo").  Responses and replies have been filed (Docs. 424, 425, 429, 430).

I. *Applicable Trial Proceedings*

During the trial in this matter, government expert Shannon Martuccci ("Martucci" or "the expert") testified, "Strangers committing child abuse is actually very rare.  It is almost always somebody that the child knows, loves, and trusts that is the abuser."  Aug. 16, 2022, Transcript ("8/16/22 TR") (Doc. 327, p. 10).  Her testimony also included describing "grooming."  *Id*. at 10-11.  Additionally, the expert testified in the following colloquy:

> Q [Ms. Wang].  Is it possible for a perpetrator to commit sexual abuse without close family members or partners or other adults knowing?
>
> A [Martucci].  Yes.
>
> Q.  Is it possible for a perpetrator to commit child sexual abuse while still being involved in normal adult intimate or sexual relationships?
>
> A.  Yes.

>Q. So those two things are not mutually exclusive?
>
>A. Correct.
>
>Q. Is it possible for a perpetrator to love or care for a child that they're also sexually abusing?
>
>A. Absolutely.
>
>MR. JACOBS: Judge, object again to scope. Those are offender characteristics, Judge.
>
>THE COURT: No, overruled.

*Id*. at 26-27. Martucci also testified as follows:

>Q [Ms. Wang]: . . . You testified earlier that it's possible -- it's possible for sexual abuse to occur without other individuals, family members knowing that it was going on. Is that based on your experience interviewing children as part of your job?
>
>A [Martucci]. Yes.
>
>Q. And is that based on your experience interviewing them throughout the 1700 forensic interviews that you've done?
>
>A. Yes, that's correct.
>
>Q. And you testified earlier also that it's possible there are -- it's possible for sexual abuse to occur while someone 12 is also in other relationships; is that correct?
>
>MR. JACOBS: Objection, your Honor. Same objection.
>
>THE COURT: I'll let her follow up with that. Go ahead.
>
>BY MS. WANG:  Q. And is that also based on your experience interviewing children, the 1700 forensic interviews that you've done?
>
>A. Yes.
>
>MR. JACOBS: Renew objection, Judge. Move -- well, we --
>
>THE COURT: Yes, you made your record, so I'll let you question the witness if you like.

*Id*. at 48-49. In ruling on the Motion for Mistrial (Doc. 372), the Court stated, *inter alia*:

>[The Court]: . . . Further, I don't think it's profile testimony. Profile testimony is evidence offered by the prosecution of kinds of persons who commit specific kinds of crimes. Here, we don't have that scenario. This is not the kind of evidence that is profiling this defendant and saying because he has sexual relations with adult women, that therefore that profiles him to molest children. So I don't think it's profile evidence being offered by the prosecution. And I think it is relevant in this particular case due to the particular facts in this case which involve testimony relating to the defendant's

1   contact with adult women during the same period of time, sexual contact with adult
2   women during the same period of time that the alleged victims talk about the molestation during the period of time so I think it is relevant to this particular case.

Aug. 17, 2022, Excerpt Transcript ("8/17/22 Ex TR") (Doc. 418, p. 31).

Additionally, former Pascua Yaqui Police Department Detective Jacob Garcia ("Garcia") testified that, during his interview of Marrufo, Marrufo was "pretty positive. He talked about things that he was doing, how he was helping other inmates get along." 8/16/22 TR at 236.  Defense counsel moved for a mistrial shortly thereafter; the motion was denied. During trial, Marrufo admitted he is a twice-convicted felon.  Defense counsel refused the Court's offer a curative instruction the day of Garcia's statement and the following day.

After the conclusion of the trial, counsel spoke with the jurors.  Two of the jurors informed defense counsel "1) they learned from the improper testimony of Detective Garcia that the Defendant was in prison when he was interviewed by the detectives and 2) during deliberations the jury discussed the fact that the Defendant had been in prison."  Motion (Doc. 416, pp. 1-2).  The government states:

> Both government counsel, two FBI agents, and the government's victim-witness advocate were all present for discussions with the jurors, which happened as a group, and heard nothing from any of the jurors along this line. In fact, undersigned counsel asked the jurors if they were aware the defendant was in custody when he was interviewed, and several of the jurors expressed surprise to this, and all the above-mentioned government representatives recall this as well. It should also be noted that the defendant's attorney did not mention the unknown jurors' alleged comments to the government until an email dated September 28, 2022, over five weeks after the alleged conversation took place.

Response (Doc. 424, pp. 2-3).

The defense has filed a Motion for New Trial (Doc. 415) and Motion for Evidentiary Hearing and to Subpoena Jurors (Doc. 416).  Marrufo requests "to subpoena the jurors in the Defendant's second trial and schedule an evidentiary hearing to question jurors regarding improper information presented during the trial and whether it was discussed during deliberations." Motion (Doc. 416, p. 1).  Marrufo is requesting a new trial based on alleged character testimony presented by Martucci and Garcia's testimony regarding Marrufo helping inmates.

II. *Conversation with Jurors*

Initially, the Court notes counsel spoke with the jurors in violation of the applicable local rule and without seeking permission from the Court. LRCrim 24.2, LRCiv 39.2(b).

Nonetheless, the Court recognizes defense counsel may have had a discussion with two jurors outside the presence of the government; the jurors informed defense counsel they learned Marrufo was in prison when being interviewed by detectives and the jury discussed the fact Marrufo had been in prison. However, the statements made by the two jurors appears to contradict the experience of the jurors who expressed surprise to government personnel that Marrufo was in custody when he was interviewed. In other words, it is disputed how many of the jurors were aware Marrufo was in custody when interviewed and whether his custody was discussed during deliberations.

III. *Motion for Evidentiary Hearing and to Subpoena Jurors* (Doc. 416)

The applicable rule states:

(1) During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

(2) A juror may testify about whether extraneous prejudicial information was improperly brought to the jury's attention.

Fed.R.Evid. 606(b). Marrufo argues post-verdict interviews of jurors are generally permissible where a proper preliminary showing of likely jury misconduct or witness incompetency is made. *Economou v. Little*, 850 F. Supp. 849, 853-54 (N.D. Cal. 1994), *citing to U.S. v. Gravely*, 840 F.2d 1156, 1159 (4th Cir. 1988) (request for leave to conduct post-verdict juror interviews properly denied because of "no threshold showing of improper outside influence"). He argues, based on the discussion with the jurors, a preliminary showing has been made that Garcia's testimony about Marrufo "having been in prison created an improper influence upon the jury." Motion (Doc. 416, p. 2).

The government asserts, however, "we already know prejudicial information (not

- 4 -

extraneous) was brought to the jury's attention, and we certainly do not need an evidentiary hearing to determine whether it happened." Response (Doc. 424, p. 4). Further, "there is nothing an evidentiary hearing would add to determine whether this testimony was brought to the jury's attention." *Id*.

Indeed, the information the defense apparently seeks to glean from the jurors is the type of information jurors are specifically prohibited from testifying about. Fed.R.Evid. 606(b)(1). Marrufo argues, however, the Court "can and should consider the effect of extraneous information or improper contacts on a juror's state of mind . . . and any other thoughts a juror might have about the [extraneous information] at issue." *United States v. Rutherford*, 371 F.3d 634, 644 (9th Cir, 2004), *internal quote and citation omitted*. Relying upon *Warger v. Shauers*, 574 U.S. 40 (2014), Marrufo asserts the information was extraneous because "[i]nadmissible information received by the jury during trial is 'extraneious' for purposes of *Rule 606(b)*." Reply (Doc. 430, p. 3). However, *Warger* does not set forth such a bright line rule. Rather, in addressing juror dishonesty during *voir dire*, the Court stated:

> We cannot agree that whenever a juror should have been excluded from the jury, anything that juror says is necessarily "extraneous" within the meaning of Rule 606(b)(2)(A). Were that correct, parties would find it quite easy to avoid Rule 606(b)'s limitations.

*Warger*, 574 U.S. at 52. Similarly, if inquiry into a jury were allowed every time inadmissible evidence was disclosed to a jury, Fed.R.Evid. 606(b)'s limitations would be meaningless.

The Court finds the information was not extraneous – it was evidence presented during trial. Although no curative instruction was given, this was at the request of the defense. In fact, no special attention was brought to the brief comment. As discussed *infra*, even if the information was extraneous, the one time reference to an unspecified custodial status was harmless.

As the Ninth Circuit has stated:

> Because a verdict may not be impeached on the basis of the jury's internal deliberations or the manner in which it arrived at its verdict, the practice of counsel in propounding questions on these subjects to jurors after trial should be discouraged.

1  *Economou*, 850 F.Supp at 852, *quoting Traver v. Meshriy*, 627 F.2d 934, 941 (9th Cir. 1980). The Court finds testimony from the jurors on the issues proposed by the defense are prohibited.

Additionally, although Marrufo argues in his reply the government may have been attempting to mention his custodial status a second time, a fair reading of the transcript does not lead to that conclusion. Marrufo cites to a colloquy between the prosecutor and Garcia:

> Q. All right. And when you spoke with him a second time, this was sometime later. It was about a year and a half later, was it not?
>
> A. Yes.
>
> Q. In about May of 2017?
>
> A. Yes.
>
> Q. Okay. Who was it who interviewed him? Was it you and Agent Grant again or was there somebody else?
>
> A. Yes, myself and Special Agent Grant.
>
> Q. So nothing different?
>
> A. No.

Reply (Doc. 430, p. 4), *quoting* 8/16/22 TR, p. 237, ll. 3-23. While this may have been leading to a discussion of the location of the interview, because it was referencing the interviewers, the plain reading of the colloquy is that the prosecutor was confirming the identity of interviewers.

As the Ninth Circuit has stated:

> Because a verdict may not be impeached on the basis of the jury's internal deliberations or the manner in which it arrived at its verdict, the practice of counsel in propounding questions on these subjects to jurors after trial should be discouraged.

*Economou*, 850 F.Supp at 852, *quoting Traver v. Meshriy*, 627 F.2d 934, 941 (9th Cir. 1980). The Court finds testimony from the jurors on the issues proposed by the defense are prohibited. The Court will deny the motion.

IV. *Motion for New Trial* (Doc. 415)

Upon a defendant's motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33. A motion for new trial should be granted "'only in exceptional cases in which the evidence preponderates heavily against the verdict.'" *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981), *quoting* 2 Wright, Federal Practice and Procedure, Criminal s 553 at 487 (1969). The burden rests with a defendant and such motions are directed to the discretion of the district judge. *United States v. Carter*, No. 20-10299, 2021 WL 5984904, at *2 (9th Cir. Dec. 16, 2021), *citations omitted*.

A. *Qualifications of Expert Martucci*

Marrufo argues Martucci did not have the proper qualifications to render the opinions she offered in this case. The Ninth Circuit has recognized non-scientific testimony may qualify as expert testimony based on the knowledge and experience of the expert. *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004) (the Daubert factors are not applicable to non-scientific testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it). Indeed, expert testimony regarding child sexual abuse may consist of an expert's "observations of typical characteristics drawn from many years' experience interviewing many, many persons, interviewed because they were purported victims of child abuse." *United States v. Halamek*, 5 F.4th 1081, 1088 (9th Cir. 2021).

Martucci obtained a Bachelor of Science in Psychology from the University of Georgia and a Master of Science in Professional Counseling from Georgia State University. Further, she is a National Board-Certified Counselor. Martucci has conducted approximately 1700 child forensic interviews, most of which involved allegations of child sexual abuse. She has worked as a Child Forensic Interview Specialist with the FBI. In this position Martucci has also coordinated and presented numerous trainings and developed educational materials on the topic of interviewing child victims and witnesses. Lastly, Martucci has

received extensive and ongoing training, education, and peer review in the area of child forensic interviewing and relevant topics related to child sexual abuse. As the Court has previously determined, Martucci is qualified as an expert witness in this case. *See* Aug. 3, 2021, minute entry (Doc. 265).

B. *Character Profile Evidence – Testimony of Martucci*

Marrufo asserts Martucci's testimony included improper character profile testimony. Marrufo asserts Martucci testified as to the common characteristics of child molesters, which is not permitted. *United States v. Gillespie*, 852 F.2d 475 (9th Cir. 1988). Indeed, Marrufo argues:

> Testimony about the practice of child molesters who groom their potential targets, testing the waters, so to speak, by gradually making inroads into the sexual abuse activity, falls squarely in the category of listed characteristics of persons that law enforcement considers typical of child molesters. The grooming behavior to which Ms. Martucci testified that are unrelated to attempts at touching the child are all normal activities, such as gift-giving, spending a lot of extra time and focusing a lot of attention on a child. These are offender characteristics when there is an allegation of sexual abuse. After testifying to the grooming practices of child molesters, describing such things as gift giving and spending more time with the child, the jury was then predisposed to finding that normal events occurring between father and daughter such as going out for ice cream, or going to a park together, were all part of a grooming procedure.

Motion for New Trial (Doc. 415, p. 6). However, the Ninth Circuit has found a trial court did not abuse its discretion in permitting such testimony regarding grooming because it may have "illuminate[d] how seemingly innocent conduct . . . could be part of a seduction technique." *Halamek*, 5 F.4th at 1088, *citations omitted*. Indeed, Martucci testified disclosures may be made accidentally because a child victim does not know what is happening is wrong. 8/16/22 TR, pp. 17-18. As argued by the government,

> Part of an offender's grooming modus operandi is to normalize sexual activity, including exposing a child to "normal" adult sexual relationships via pornography or real-life sexual relationships, in order to destigmatize sexual activity for that child. Another aspect of the grooming modus operandi is to engage in behavior, including the way the grooming offender presents themself, that makes the child less likely to disclose abuse to others including adults and family members.

Response (Doc. 425, p. 5). Considering the specific circumstances presented in this case,

1  including the fact that evidence was presented at trial that Marrufo had girlfriends and that
2  they spent time at the residence, *see e.g.* 8/17/2022 TR, pp. 37-39, 55, that Marrufo gave as
3  a reason for denying the charges was that he had other women in his life, 8/17/2022 Ex TR,
4  p. 30, and considering Martucci's testimony in its entirety, Martucci's testimony is similar to
5  the grooming and relationship testimony found permissible in *Halamek*. The Court finds this
6  testimony was not improper character evidence and will deny the Motion for New Trial on
7  this basis.

C. *Marrufo Helping Inmates - Testimony of Garcia*

Marrufo argues prejudicial testimony from Garcia about Marrufo "being in prison" during the interview with the detectives was presented to the jury. Motion (Doc. 415, pp. 11, 13). Initially, the Court recognizes that Marrufo did not testify he was in prison. Garcia's testimony leaves open to whether he was referencing a felony incarceration, a misdemeanor incarceration, or pre-trial custodial status.

The parties agree the admission of this testimony was improper. Although no curative or limiting instruction was given, this was at the request of the defense. In fact, no special attention was brought to the brief comment. Speculation that the detective's testimony allowed the jury to recognize Marrufo's offenses were serious enough to warrant prison time[1] is not supported by the detective's testimony. Indeed, the testimony does not clarify if Marrufo was in a prison serving felony time, a jail facility serving misdemeanor time, a jail facility during pre-trial incarceration, or simply volunteering or working for an incarceration facility. In light of Marrufo's testimony that he had two prior felony convictions, Aug. 19, 2002 Transcript ("8/19/22 TR") (Doc. 412, p. 68), the Court finds the one-time reference to possible incarceration due to a felony conviction was harmless. *See United States v. Allen*,

---

[1] Marrufo asserts the evidence of him being in "prison" at the time he was interviewed and "[b]eing in prison is even worse [than] disclosing the defendant has a felony conviction because prison sentences are commonly understood to be reserved for the worst felony offenders." Motion (Doc. 415, p. 13).

425 F.3d 1231, 1236 (9th Cir.2005) (holding that an "isolated reference to [the defendant's] prior incarceration did not warrant a mistrial," while noting that "any resulting prejudice dissipated when the district court immediately gave a curative instruction to the jury"); *United States v. Arambula–Ruiz*, 987 F.2d 599, 604–05 (9th Cir.1993) (mentions of irrelevant prior arrests harmless where they were only incidental to the testimony's main aim and were not referenced in later argument, and the court had given proper limiting instructions on other admissible prior bad acts); *United States v. Yarbrough*, 852 F.2d 1522, 1540 (9th Cir. 1988) ("isolated references to Yarbrough's prior prison record did not warrant a mistrial"); *see also McCreary v. Diaz*, No. 18CV0789-CAB (BGS), 2019 WL 6840410, at *24 (S.D. Cal. Dec. 16, 2019). Although Marrufo declined the Court's offer to give a curative or limiting instruction regarding the comment, the final instructions directed the jury to not consider a prior conviction as evidence of guilt of the charged crimes. Further, the jurors were instructed they were here to only determine whether Marrufo was guilty of the charged crimes.

This case is not exceptional and the evidence does not heavily preponderate against the verdict. The interests of justice do not require a new trial; the Court will deny the motion.

Accordingly, IT IS ORDERED:

1. The Motion for Extension of Time to File Replies (Doc. 427) is GRANTED. The Court accepts the replies filed in this case.

2. The Motion for Evidentiary Hearing and to Subpoena Jurors (Doc. 416) is DENIED.

3. The Motion for New Trial (Doc. 415) is DENIED.

DATED this 9th day of January, 2023.

_____
Cindy K. Jorgenson
United States District Judge